UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DENNIS STRONG,

                          Plaintiff,

v.                                               Case No. 18-cv-237-pp

OUTAGAMIE COUNTY SHERIFF'S DEPARTMENT,
DOUGLAS L. VERHEYEN, LANCE L. WILSON,
CHAD A. BEAUVAIS AND WISCONSIN
MUNICIPAL MUTUAL INSURANCE COMPANY,

                          Defendants.

---

**ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT NO. 2) AND SCREENING COMPLAINT (DKT. NO. 1)**

---

The plaintiff, a state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Dkt. No. 1. This decision resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepayment of the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act applies to this case because the plaintiff was in custody when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his case without prepaying the civil case filing fee, if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C.

1

§1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On February 20, 2018, the court waived the initial partial filing fee. Dkt. No. 5. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee, and will allow him to pay the $350 filing fee over time in the manner explained at the end of this order.

### II. Screening the Plaintiff's Complaint

#### A. Federal Screening Standard

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which the court cannot grant relief, or that seek monetary relief from a defendant who is immune from that relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the

United States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### B. The Plaintiff's Allegations

The plaintiff, who was confined at the Outagamie County Jail during the events he describes in the complaint, has sued the Outagamie County Sheriff's Department, Lieutenant Douglas L. Verheyen, Sergeant Lance L. Wilson, Chad A. Beauvais and the Wisconsin Municipal Mutual Insurance Company. Dkt. No. 1.

The plaintiff alleges that on January 16, 2016, defendant Wilson sexually harassed him. Id. at 6. Allegedly, Wilson stated, "Welcome home sweetheart," to the plaintiff while "exhibiting a physical gesture of a kiss and a sound effect thereof followed with a wink of the eye directed explicitly to Strong." Id.

The plaintiff alleges that about forty-five days later, in March 2016, he "returned" to the jail (the court assumes that he was out of custody in the meantime). Id. The plaintiff states that following his return, he reported Wilson's conduct "to various parties to include those from DOC [Department of Corrections] and OCSO [Outagamie County Sheriff's Office]." Id. at 7. According to the plaintiff, he subsequently met with Wilson's supervisor, defendant

3

Verheyen, and gave Verheyen "explicit details of Wilson's sexual harassment upon Strong on 1/16/2016 as well as occasions prior." Id. Verheyen allegedly had the plaintiff moved "to the most luxurious [area] of the jail for lock-up inmates as a condition Strong does not pursue further issues into Wilson's sexual harassment upon Strong[.]" Id. The plaintiff alleges that jail security classification specialist Chad Beauvais opposed the move, "given Strong's history of concerns and current need for a high security housing setting at the time." Id.

The plaintiff allegedly returned to the jail on June 19, 2016, with a release date of October 17, 2016. Id. On October 7, 2016, the plaintiff learned that his daughter had died suddenly on October 6, 2016. Id. Appleton Police Department Detective Neil Rabas was investigating the death; he informed the plaintiff that the funeral service was scheduled for October 12, 2016 in the City of Appleton, at a church about two miles from the jail. Id. at 8. The plaintiff alleges that he asked Wilson (the supervisor on duty at the jail at the time) to telephone family about the death and for details of the funeral, to contact a family attorney so that attorney could ask Judge Krueger for a three- to four-hour court-ordered furlough to allow the plaintiff to attend the funeral. Id. Wilson allegedly denied the plaintiff's request to call his family and to contact an attorney. Id. The plaintiff says that Wilson told him that Wilson would contact Judge Krueger on the plaintiff's behalf to request a furlough. Id. at 9. According to the plaintiff, before the funeral service, Wilson informed him that

4

Judge Krueger denied the plaintiff a furlough to attend his daughter's funeral (which was scheduled five days before his release from jail). Id.

The plaintiff alleges that the jail provides an electronic communication system for inmates and that, at that time, "such electronic communications were limited to inmates contacting the jail accounting staff and housing classification specialist Chad Beauvais." Id. According to the plaintiff, after his "encounter" with Wilson to try to contact family and an attorney, the plaintiff sent Beauvais via electronic messaging text an "offender management system" document that Beauvais refused to process. Id.

The plaintiff alleges that on March 22, 2017, he returned to the jail, and that on June 2, 2017, he appeared before Judge Krueger for his court case. Id. During the hearing, Judge Krueger allegedly said that neither the death of the plaintiff's daughter or the request for a furlough to attend the funeral had been brought to the court's attention. Id. at 11.

Next, the plaintiff alleges that on September 27 and 28, 2017, a consultant conducted an audit at the jail "for the United States Department of Justice for the Prison Rape Elimination Act (PREA)." Id. The plaintiff allegedly met with the consultant on both days, sharing a "summary of the above sexual harassment from Wilson and the events that followed" and meeting at length with the consultant to discuss the situation. Id. The plaintiff states that in October 2017, Lieutenant Brian Wirtz told him that the issues the plaintiff raised to the PREA auditor "were the most significant of inmate generated PREA related concerns to have surfaced during the above audit of the

Outagamie County Jail." Id. The plaintiff believes that Wilson "destroyed and/or misplaced documents sent to Strong by Wirtz on 10/6/17, the 1 year anniversary of the death of Strong's daughter that were to be provided to Strong on instruction of Wirtz by Wilson's office as a retaliatory act of Strong having met with the PREA auditor." Id.

The plaintiff asserts that on "several occasions" during his current stay at the jail, Wilson "denied Strong services of a notary public to notarize legal pleadings or required documents as a deliberate attempt to obstruct/impede and/or frustrate Strong's access to the courts in various other matters as an act of retaliation upon Strong" for filing a complaint about Wilson's sexual harassment. Id. at 12.

The plaintiff claims that Wilson retaliated against him for filing a complaint about the sexual harassment by the above-described alleged interference with his access to the courts, by denying the plaintiff's access to contact an attorney and family members, and by preventing the plaintiff from obtaining a furlough to attend his daughter's funeral. Id. at 12-13.

Next, the plaintiff claims that Beauvais's actions "to prevent Strong from timely communicating to the jail captain . . . was an effort of Beauvais preventing Strong from bringing concerns of the sexual harassment and retaliation by Wilson upon Strong to the administrator of the jail." Id. at 13.

The plaintiff also claims that Verheyen's actions "to bribe Strong from pursuing a formal complaint on the sexual harassment with movement of Strong to a jail housing accommodation of a luxurious area within the jail is

6

egregious conduct of a high ranking officer of the Outagamie County Sheriff's Department while performing ministerial duties to inmates to include that of Strong at the jail." Id.

The plaintiff claims that the sheriff's department is liable under Wis. Stat. §895.46 (State and political subdivisions thereof to pay judgments taken against officers) and that the Wisconsin Municipal Insurance Company is liable because "[t]he acts of Verheyen, Wilson, and Beauvais took place in upper management, supervisory and specialized roles/positions within the Outagamie County Sheriff's Department and were done willfully and intentionally with deliberate planning and/or act." Id. at 14.

The plaintiff seeks compensatory and punitive damages. Id. at 3. He also seeks declaratory and injunctive relief. Id.

C. The Court's Analysis

To state a First Amendment retaliation claim, the plaintiff must allege that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity he engaged in was at least a motivating factor for the retaliatory action. Archer v. Chisholm, 870 F.3d 603, 618 (7th Cir. 2017) (citing Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)).

The plaintiff has alleged sufficient facts to allow him to proceed on a retaliation claim against Wilson. He claims that he exercised a First Amendment right—complaining about Wilson's alleged sexual harassment—and that as a result, Wilson attempted to interfere with the plaintiff's access to

the courts, would not let the plaintiff contact his family or an attorney after his daughter died and lied about requesting a furlough for the plaintiff so that the plaintiff could attend his daughter's funeral.

The plaintiff has not alleged facts to support a retaliation claim against Verheyen or Beauvais. Rather than asserting that Verheyen deprived him of anything, the plaintiff alleges that Verheyen engaged in the "egregious" conduct of offering to move the plaintiff to a "luxurious" area of the jail if the plaintiff would not complain about the harassment. The plaintiff does not allege that he suffered any deprivation based on Verheyen's statement. It is also not clear whether the plaintiff moved to a "luxurious" area of the jail or not, but offering to make someone's situation better in exchange for silence does not constitute First Amendment retaliation. With respect to Beauvais, the plaintiff alleges only that Beauvais opposed the plaintiff's transfer to a luxurious area of the jail based on the plaintiff's security classification, and that the plaintiff sent an electronic message that Beauvais refused to process. These allegations do not state a retaliation claim. The court will dismiss Verheyen and Beauvais.

The plaintiff also sues the Outagamie County Sheriff's Department. The plaintiff cannot hold the sheriff's department liable under §1983. Under Wisconsin law, the sheriff's department is an arm of the County. See Abraham v. Piechowski, 13 F. Supp. 2d 870, 877-879 (E.D. Wis. 1998). This means that the "Sheriff's Department is not a legal entity separable from the county government which it serves . . . ." Whiting v. Marathon Cty. Sherriff's Dep't, 382 F.3d 700, 704 (7th Cir. 2004). A plaintiff cannot sue a sheriff's department

8

under §1983. The court will dismiss the Outagamie County Sheriff's Department as a defendant.[1]

As for Wisconsin Municipal Mutual Insurance Company, although the county's insurance company may be obliged to indemnify county officials if they are found liable under §1983, the plaintiff cannot sue the insurance company under §1983 because it is not a state actor, and the plaintiff has not alleged that the insurance company deprived him of any constitutional rights while acting under the color of a state statute. See Wagner v. Washington Cty., 493 F.3d 833, 836 (7th Cir. 2007) (citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)); see also Thurman v. Vill. of Homewood, 446 F.3d 682, 687 (7th Cir. 2006). The court will dismiss the insurance company.

### III. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Outagamie County Sheriff's Department, Verheyen, Beauvais and Wisconsin Municipal Mutual Insurance Company.

---

[1] Although not entirely clear, the plaintiff may have intended to allege an official capacity claim against the Sheriff's Department. If that is what he was trying to do, the proper defendant would be Outagamie County. To prevail against a county, the plaintiff would have to demonstrate that he suffered a deprivation of his constitutional rights based on some official policy, widespread custom or deliberate act of a county decision maker of the municipality or department. See Wagner v. Washington Cty., 493 F.3d 833, 836 (7th Cir. 2007) (citing Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690-91 (1978)). The plaintiff has not stated such a claim.

The court **ORDERS** the United States Marshal to serve a copy of the complaint and this order on defendant Lance L. Wilson under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Wilson to file a responsive pleading to the complaint.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $350 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of Redgranite Correctional Institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court.[2] If the plaintiff is not incarcerated at a Prisoner E-Filing institution, he must submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

11

information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 30th day of July, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**